CATHERINE SIMONSEN, GUARDIAN, APPELLEE, V. JAMES HENRY HOUSE, APPELLANT.

FILED SEPTEMBER 20, 1915.    No. 18233.

Contracts: CANCELATION: INSANITY. A merchant, who had shown some symptoms of insanity previous to the transaction, exchanged his stock of goods and certain real estate for a tract of land incumbered by mortgage, the value of which was grossly disproportionate to the value of the property with which he parted. A few months afterwards the disease progressed to such an extent that

he was adjudged insane and committed to an insane hospital. *Held*, upon a trial *de novo*, that the decree of of the district court setting aside the conveyances is justified by the law and the evidence.

APPEAL from the district court for Washington county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*E. B. Carrigan* and *Frank Dolezal*, for appellant.

*Sullivan & Rait, Arthur C. Thomsen* and *S. A. Searle*, contra.

LETTON, J.

In September, 1911, Henry Simonsen owned a stock of general merchandise, and resided in the village of Washington, Nebraska. He also owned his residence, the store building, a livery barn, an ice house, and other structures in the village. Early in October of that year he exchanged his stock of goods and all his real estate for 350 acres of land in Fremont county, Iowa, belonging to the defendant and appellant, James Henry House. After the exchange Simsonsen remained with his family in Washington, and assisted in the store to some extent, until early in November, when he removed to Omaha. In February, 1912, Simonsen was sent to the Omaha General Hospital for treatment on account of mental trouble. About a month afterwards he was adjudged to be insane and committed to the state asylum for the insane at Lincoln, where he has since remained. The nature of his affliction is involutional melancholia, and it seems to be conceded that it is incurable. His wife was afterwards appointed guardian of his estate. In July, 1912, she began two actions, one a suit in replevin to recover the possession of the personal property, and the other an action in equity to set aside the conveyance of the real estate, upon the ground that Simonsen was of unsound mind at the time of the transaction, was incapable of knowing or judging the value of the property, and incompetent to enter into any contract. It is alleged that the property exchanged by him was of the reasonable value of $16,000, and that the property received,

after deducting the liens and incumbrances, was not worth more than $1,000. The replevin case and the action in equity were consolidated and tried to the district court without a jury. Possession of the personal property was not taken under the writ of replevin. A mass of testimony was taken as to the mental condition of Simonsen at and before the time of the transaction, and the value of the respective pieces of property. The court found that Simonsen was insane at the time of the exchange, and that the value of the personal property was $9,000. Judgment was entered for the value of the goods, and a decree requiring a reconveyance by House of the real estate, and that, upon such reconveyance being made and the payment of the judgment, the title to the land in Iowa be reconveyed to House. A motion for a new trial was filed and overruled, and defendant has appealed.

The questions involved are questions of fact; the principal one being as to Simonsen's sanity at the time of the transaction. This question is not free from doubt. According to the testimony of some of the members of his family, and a few other witnesses, for some time before the exchange he had been suffering from severe headaches; he frequently carried on conversations with himself in the store in an excited manner; contrary to his former course of conduct, he became irascible and was easily irritated; he would not allow his family to converse at the table; his gait became shambling, though he had formerly walked with a quick, firm step; and a number of other peculiarities were detailed, different from his former manner and demeanor. The testimony of the witnesses for the defendant was to the effect that, although they were intimate with and had seen Simonsen nearly every day until after he sold the store, they had observed nothing unusual in his manner or in his actions. It was also shown that while he was living in Omaha he had examined and recommended the purchase of a tract of land for his wife, apparently using sound judgment. The medical witnesses agreed that Simonsen at the time of his commitment to the asylum was suffering from involutional melancholia, but disagreed as

to whether the facts in evidence showed that he was so insane at the time of the transaction with House as to be incompetent. It was practically conceded that during the progress of the disease his mind might be clearer and his judgment better at one time than at another, but they left in doubt the time when his disease affected his judgment. The theory of defendant was that the disease had its inception after Simonsen moved to Omaha, and the evidence in his behalf tended to establish that a complete change of locality and occupation, or the lack of occupation, by a man who had previously led an active life, might, at Simonsen's age, bring on the type of insanity with which he was afflicted. On the other hand, the testimony in behalf of plaintiff tended to show that the symptoms described which existed prior to the exchange indicated an impairment of the mind at that time, which might, at times, seriously affect the judgment.

Before the exchange was made Simonsen went to Iowa with House, and was taken over the land by a former owner who was acting for House. He seemed to be impressed with its value on account of its orchards, and as a hog farm on account of the nut-bearing trees growing on it, and concluded negotiations on his return home. It seems clear from the evidence that this land is comparatively of little value; that a large portion of it consists of steep hills and deep hollows and ravines, mostly covered with scrub timber; that only a very small portion is tillable; that there are now only about 34 acres under cultivation in 9 scattered fields; and that a small number of apple trees are standing on it. There is a conflict in the evidence as to the actual value of the property, the witnesses for plaintiff putting the value at from $15 to $20 an acre, while the defendant's witnesses estimate the value to be from $40 to $50 an acre. We are satisfied from the evidence that $20 an acre, or a little more, was the fair value of the land, and that the incumbrances nearly equaled its value, leaving the net value of the property he received in exchange little or nothing. Simonsen had been a successful business man, was careful and economical, and had acquired his

property by the exercise of industry and good judgment. The very fact that he exchanged property of the nature of that which he possessed at Washington for a tract of land such as that of defendant, even after giving due weight to the facts that he was over 60 years of age, his family was scattering, and he wished to retire from business, seems to indicate an impairment of judgment which in all probability resulted from mental disease. There is testimony that some time after Simonsen made the exchange and after he had revisited the Iowa land, he expressed the opinion that no man in his right mind would have entered into the transaction. He evidently had a lucid interval when he made this statement.

The findings and decree are in accordance with the evidence, and the judgment of the district court is

AFFIRMED.

HAMER, J., not sitting.